# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

IRAN AMANDAH,

               Plaintiff,

v.

ALRO STEEL CORPORATION,

               Defendant.

Case No. 19-CV-1607-JPS

**ORDER**

      On November 1, 2019, plaintiff Iran Amandah ("Amandah") filed a complaint in this action alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Wisconsin wage and hour laws, including Wis. Stat. §§ 104.01, 103.01 *et seq.*; Wis. Admin. Code §§ DWD 272.001, 274.01 *et seq.*. (Docket #1). The defendant in this case is Alro Steel Corporation ("Alro"), a steel distribution company that has warehouses throughout the nation. Amandah, a former employee, seeks to bring his FLSA claim on a class basis, which in the parlance of the FLSA is called a collective action. *See* 29 U.S.C. § 216(b). On February 20, 2020, Amandah filed a motion for conditional certification of his FLSA claim as a collective action. (Docket #11). That motion is now fully briefed. For the reasons stated below, Amandah's motion for conditional certification will be denied.

1. **RELEVANT FACTS**

      Alro is a steel distribution company that operates 73 warehouses across twelve states, including one in Wauwatosa, Wisconsin ("the Wauwatosa Warehouse"). Approximately 1500 employees work across these 73 warehouses.

Amandah worked at the Wauwatosa Warehouse as a Saw Operator or Machine Operator between February and October 2019. Like other Alro employees at these warehouses, Amandah was an hourly-paid, non-exempt employee. In order to carry out his duties at the warehouse, which involved cutting steel, Amandah was required to don certain protective gear including gloves, Kevlar arm protectors, a hard hat, and goggles. It takes approximately one minute to don the protective gear. Amandah also wore a uniform that consisted of pants, a shirt, and work boots. Like other employees, Amandah had the option of either coming to work in his uniform, or changing in the workplace's locker rooms, which were just off of the work floor and near the time station where employees punched in.

Alro trained its employees on a concept called "Alro Time," which encouraged promptness at work. New employees learned about "Alro Time" during a three- to four-week onboarding period. The Onboarder's Manual explains,

> Be on time EVERY day.
> . . .
>
> We do not expect you to arrive to work 15 minutes early every day, but if you have a meeting or will be off-site, the expectation is that you arrive 15 minutes early. You will then be ready to start on time. If you need to change at work, get coffee/water, then you need to arrive early so that you are at your work station ready to go on time.

(Docket #15-2 at 71). The Code of Conduct further provides that "it is Alro's expectation that you will. . .be early for all scheduled activities." *Id.* at 72.

Alro conducted daily, pre-shift meetings at each of its warehouses, which all employees were required to attend. *Id.* at 50:20–22. Consistent with "Alro Time," which asked its employees to "arrive 15 minutes early"

Page 2 of 8
Case 2:19-cv-01607-JPS   Filed 08/21/20   Page 2 of 8   Document 23

if they have a meeting, employees at Alro, in theory, were expected to arrive at work 15 minutes early every day. However, in a somewhat contradictory manner, the handbook advised that employees

> "[P]unch in" no more than ten (10) minutes before your scheduled start time, as the Time and Attendance System will automatically round your punch time to your scheduled start time. Only supervisors may approve or confirm an earlier start time on a particular day for which you will be paid from that modified start time. Supervisors shall monitor punch times to make sure that employees are not working either before scheduled start or [after] stop times without authorization. Performing work and/or training without supervisor knowledge and written approval will be grounds for discipline.

(Docket #14-1 at 12). Alro made clear that "[w]orking overtime without prior written authorization may result in disciplinary action." *Id.* at 14.

Ronald Sloan ("Sloan"), a supervisor who conducted onboarding training at the Wauwatosa Warehouse, agreed that it was his "expectation that once somebody punched in, they would immediately go to work[.]" (Docket #15-1 at 57:13–16). However, he also reiterated that arriving 15 minutes early was not mandatory, but rather part of the Alro culture. *Id.* at 68. He explained that this fifteen-minute recommendation might, in actuality, be ten minutes, or five minutes, or however long was necessary for an employee to change into his or her uniform, use the restroom, or get coffee before the shift actually began. *Id.* at 68:11–22.

During the statutory period, Alro employees were required to enter their work hours in a digital timekeeping system called Kronos. Kronos documented the times at which employees began work, left work, started their breaks, and ended their breaks. Alro calculated its employees' hours for compensation purposes "by **determining the number of hours**

**between the employee's scheduled start time and the time he punched out**, and deducting 30 minutes for an unpaid paid [sic] lunch period." (Docket #15-3 at 5). In other words, Alro did not "count" the time that its employees arrived before their shift to begin the day, even though this would have been a near-daily occurrence by the terms of Alro's own policies and practices. Aside from this, however, there is no indication that Alro rounded up its employees' start times if they were tardy to work, nor is there any indication that Alro rounded down its employees' punch-out times if their shifts ran late. There is also no indication that Alro disciplined employees who did not arrive to work, or punch in, 15 minutes early. Indeed, Amandah only punched in 15 minutes early approximately seven times in an eight-month period, and never received discipline.

**2. ANALYSIS**

**2.1 Conditional Certification**

Conditional certification of a collective action is distinct from the procedure normally applied to class litigation under Federal Rule of Civil Procedure 23. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579–80 (7th Cir. 1982). In an FLSA action, class members must "opt in to be bound, while [Rule 23 class members] must opt out not to be bound." *Id.* Conditional certification enables notification to putative class members so that they may affirmatively opt in to the collective action and class discovery may be taken. 29 U.S.C. § 216(b); *Woods*, 686 F.2d at 579–80. Once this is done, the plaintiff can move for final, full certification of the collective action, at which point the Court will "reevaluate the conditional certification 'to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis.'" *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008) (citing and

quoting *Heckler v. D.K. Funding, LLC*, 313 F. Supp. 2d 777, 779 (N.D. Ill. 2007)).

For conditional certification, the plaintiff must only make "a minimal showing that others in the potential class are similarly situated," *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004), which requires no more than "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan," *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001). It is only after the class has opted in that the Court determines whether the collective members are, in fact, similarly situated. *Brabazon v. Aurora Health Care, Inc.*, No. 10-cv-714, 2011 WL 1131097, at *2 (E.D. Wis. Mar. 28, 2011). Thus, at this stage, Amandah must show that Alro's policy of "Alro Time," in connection with its practice of calculating hours worked from shift-start time, rather than punch-in time, results in "a rounding policy that applied uniformly to all potential plaintiffs and that. . .appears to be inconsistent with FLSA regulations." *Binissia v. ABM Indus.*, No. 13-c-1230, 2014 WL 793111, at *5 (N.D. Ill. Feb. 26, 2014).

The regulations implementing the FLSA provide that "where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work." 29 C.F.R. § 785.48(a). Additionally, "activities which are preliminary to or postliminary to [the] principal activity" for which the employee was paid need not be compensated. 29 U.S.C. § 254(a)(2). The Supreme Court interpreted this as requiring compensation only for activities that are "integral and indispensable" to the job. *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956) (finding that employees' daily showers and clothing-changes were

Page 5 of 8
Case 2:19-cv-01607-JPS   Filed 08/21/20   Page 5 of 8   Document 23

integral and indispensable to the performance of a wet cell battery plant); *c.f. Pirant v. U.S. Postal Serv.*, 542 F.3d 202, 208 (7th Cir. 2008) (finding that time spent donning "extensive and unique protective equipment" would be compensable, but the time that a postal worker spent putting on standard attire like a "uniform shirt, gloves, and work shoes" would not be).

Amandah contends that he and the putative collective are all hourly-paid, non-exempt workers at each of Alro's 73 warehouses across the nation, and that they were all subject to the same "Alro Time" policy and daily, pre-shift meetings, which required that they come to work at least 15 minutes early. Since Alro's payroll policy rounded its employees' start times from their earlier punch-in times to their later, scheduled shift start times, Amandah contends that Alro engaged in an impermissible rounding policy in violation of the FLSA.

In support of these contentions, he has submitted two worker declarations (including his own), both from the Wauwatosa Warehouse, as well as two deposition transcripts from Alro's corporate employees, a copy of Defendant's handbook, and a copy of Alro's sworn interrogatory answers. The Court cannot find, based on this evidence, that all of Alro's hourly-paid, non-exempt employees were "victims of a common policy or plan that violated the law.'" *Brabazon*, 2011 WL 1131097, at *2 (quoting *Adair v. Wis. Bell, Inc.*, No. 08-cv-280, 2008 WL 4224360, at *3 (E.D. Wis. Sept. 11, 2008)).

To begin with, the declarations suggest that the majority of the time spent between punch-in and the start of the shift was spent changing into uniform. Under *Pirant* and *Steiner*, only time spent donning "extensive and unique protective equipment," or engaging in activities that are "integral

and indispensable" to the job, is compensable; time spent getting into a standard uniform is exempt under the FLSA. 542 F.3d at 208; 350 U.S. at 256. Amandah has provided some evidence that he was expected to be in uniform *and* protective gear at the start of the pre-shift meeting at the Wauwatosa Warehouse, but there is no evidence that this was the expectation across all other 73 warehouses. Moreover, there is no evidence that any employee, including Amandah, was ever disciplined for failing to abide by Alro-time—leading to the inference that if an employee punched-in to work on the hour of his shift start-time while already wearing his uniform and protective gear, he would not be sanctioned.

Even if the Court allows for the doubtful but nevertheless conceivable FLSA claim that employees at Alro's Wauwatosa Warehouse were not compensated for time they spent donning specialized protective gear, it appears that even this policy was not uniformly applied within the Wauwatosa Warehouse. While Amandah's declaration suggests that he believed he was expected to show up to the pre-shift meeting wearing these protective items, Matrullo makes no such contention—he only states that he did, in fact, change into his uniform, and don protective gear, before the pre-shift meeting. (Docket #14 ¶ 8); (Docket #13 ¶ 6). Amandah's understanding of the requirements imposed may be sufficient for him to bring a singular (if weak) FLSA claim, but he has not proffered enough evidence to conditionally certify a collective on this basis.

This is not a case of an explicit rounding policy that was applied uniformly to similarly situated employees whose start and stop times went unmonitored by supervisors, as in *Abukar v. Reynolds*, No. 19-cv-898, 2019 WL 6896154, at *2–3 (E.D. Wis. 2019). This case is more akin to that in *Robles v. Brunswick*, where the district court determined that certification was not

warranted because only one putative class member had been instructed to begin working upon punching in, the supervisors were tasked with determining whether an employee was impermissibly working pre-shift, and there was a strict policy against working overtime. *Robles v. Brunswick Corp.*, No. 18-cv-1809, 2020 WL 109776, at *7 (E.D. Wis. Jan 9, 2020). The Court is mindful that the mere existence of a policy forbidding overtime work is not a prophylaxis against suit if there are other unlawful policies at play that actually deprive workers from their wages. However, in this case, as in *Robles*, there is simply no showing, even at the lenient standard imposed upon conditional certifications, that Alro imposed an impermissible rounding practice as to the collective, and that Amandah is similarly situated as all other Alro employees. *See id.*

3. **CONCLUSION**

For the reasons stated above, the Court is constrained to deny Amandah's motion for conditional certification.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for conditional certification of the FLSA collective action (Docket #11) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 21st day of August, 2020.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge